Nashua District Court
No. 2003-552

## THE STATE OF NEW HAMPSHIRE

v.

## CHRISTINE SOUSA

Argued: June 17, 2004
Opinion Issued: August 26, 2004

*Kelly A. Ayotte*, acting attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Michael S. Bowser, Jr. and Associates*, of Nashua (*Michael S. Bowser, Jr.* on the brief and orally), for the defendant.

GALWAY, J. The State appeals an order of the Nashua District Court (*Ryan*, J.) granting the motion to suppress filed by the defendant, Christine Sousa. The State challenges the trial court's determination that the stop of the defendant's vehicle was unconstitutional. *See* U.S. CONST. amends. IV, XIV; N.H. CONST. pt. 1, art. 19. We vacate and remand.

On April 20, 2003, an anonymous caller informed the Nashua Police Department that a blue pickup truck with Massachusetts plate number 9557FO was "all over the road," and had entered the Everett Turnpike at Exit 6 heading south. This information was forwarded to the New Hampshire State Police dispatcher, who contacted State Trooper Thomas Lencki, Jr. The dispatcher told Trooper Lencki that the Nashua Police Department had received a report of "erratic op" going southbound from Exit 6. The dispatcher provided the license plate number and told Trooper Lencki that the plate belonged to a blue Ford pickup truck from Lowell, Massachusetts. Trooper Lencki confirmed this information by running a license plate check from his cruiser.

Trooper Lencki drove to Exit 2 of the Everett Turnpike, positioning his cruiser so that it faced south at the on-ramp. A couple of minutes later, he saw the blue Ford pickup truck and pulled it over. The trooper did not observe any erratic driving. Thereafter, based upon his subsequent observations of the defendant, he arrested her for driving while intoxicated. *See* RSA 265:82 (Supp. 2003).

The defendant filed a motion to suppress claiming that the anonymous call did not give rise to reasonable suspicion to justify the investigatory stop of her truck. The trial court ruled that, based upon the totality of the circumstances, the anonymous tip did not suffice. Thus, the stop violated the defendant's constitutional right to be free from unreasonable searches and seizures. *See* U.S. CONST. amends IV, XIV; N.H. CONST. pt. I, art. 19. On appeal, the State argues that the anonymous tip was sufficient to support a finding of reasonable suspicion.

We first address this issue under the State Constitution and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). We accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. *State v. Wallace*, 146 N.H. 146, 148 (2001). We review the trial court's legal conclusions *de novo. Id.*

■ To be constitutional, an investigatory stop must be supported by reasonable suspicion. *See State v. Hight*, 146 N.H. 746, 748 (2001). Because reasonable suspicion is a less demanding standard than probable cause, it "can arise from information that is less reliable than that required to show probable cause," such as an anonymous tip. *Alabama v. White*, 496 U.S. 325, 330 (1990); *State v. Melanson*, 140 N.H. 199, 201 (1995). To determine whether an anonymous tip gives rise to reasonable suspicion, we examine the reliability and credibility of the informant and his or her basis of knowledge, and then make a final judgment based upon the totality of the circumstances. *Melanson*, 140 N.H. at 201. Examining the totality of the circumstances includes considering the quantity of the information the tip conveys as well as its quality or reliability. *White*, 496 U.S. at 330. Where a tip has a relatively low degree of reliability, "more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.*

■ The sole issue on appeal is whether the anonymous call gave rise to reasonable suspicion to justify the investigatory stop of the defendant's truck. The central issue in utilizing anonymous tips to establish reasonable suspicion is "whether the informant's information is so reliable and complete that it makes past, present or pending criminal conduct sufficiently likely to justify a stopping of the designated person for investigation." 4 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(h), at 213 (1996).

The United States Supreme Court addressed this concern in *Alabama v. White*, which involved an anonymous tip that the defendant would leave a certain apartment in a certain vehicle, would be going to a certain motel, and would be in possession of an ounce of cocaine. *White*, 496 U.S. at 327. The Court, admitting that it was a "close case," concluded that the subsequent stop of the defendant was supported by reasonable suspicion because the tip provided predictions of the defendant's future behavior, which were corroborated by the police prior to the stop. *Id.* at 332. The Court acknowledged that the tip alone was insufficient because it indicated nothing about the informant's reliability or basis of knowledge. *Id.* at 329. Rather, the finding of reasonable suspicion hinged upon the police officer's corroboration of the defendant's future behavior as predicted in the anonymous tip. *See id.* at 332. The Court reasoned that the accurate prediction of future behavior demonstrated that the informant had "a special familiarity" with the defendant's affairs. *Id.* This, in turn, supported an inference that "a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.*

In contrast, the anonymous tip in *Florida v. J.L.*, 529 U.S. 266, 274 (2000), was not sufficiently reliable to establish reasonable suspicion. In *J.L.*, the police received an anonymous tip reporting that a young black male in a plaid shirt, standing at a specific bus stop, was carrying a gun. *J.L.*, 529 U.S. at 268. The caller did not identify himself or explain how he knew the information he reported. *See id.* Based solely upon this tip, the police stopped and frisked the defendant, a young man meeting the tipster's description, even though they did not see a firearm or observe any suspicious behavior. *See id.* The Court ruled that the tip did not create reasonable suspicion to justify the stop-and-frisk. *Id.* at 270-71. Notably lacking in the tip was predictive information by which the police could test the informant's knowledge or credibility. *Id.* at 271. Without more, a tip that provides "[a]n accurate description of a subject's readily observable location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity." *Id.* at 272. In concluding that the tip did not establish reasonable suspicion, the Court noted that "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*; *see State v. Blake*, 146 N.H. 1, 4 (2001).

Although the Supreme Court in *White* relied heavily upon the corroboration of future behavior in finding the tip reliable, there are other circumstances that may also support the reliability of an anonymous tip. LAFAVE, *supra* at 98, n.391.1 (Supp. 2004); *State v. Boyea*, 765 A.2d 862, 872 (Vt. 2000) (*Skoglund*, J., concurring) ("[P]redictive information may be sufficient, but is not necessary, to establish reasonable suspicion."), *cert. denied*, 533 U.S. 917 (2001). In his concurring opinion in *J.L.*, Justice Kennedy noted that an anonymous tip may "have certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action." *J.L.*, 529 U.S. at 275 (*Kennedy*, J., concurring). One such feature noted by Justice Kennedy was the use of instant caller identification or voice recording of telephone tips to allow the police to locate or determine the identity of an anonymous telephone informant. *Id.* at 276 (*Kennedy*, J., concurring).

As set forth above, we recognize that evaluating the credibility of the informant is important. *See id.* at 271; *White*, 496 U.S. at 330. Nonetheless, it is but one of many factors considered in determining whether, given the totality of the circumstances, an anonymous tip establishes reasonable suspicion. *See White*, 496 U.S. at 330. Where, for instance, the tip has a relatively low degree of reliability, other factors must be considered in the totality of the circumstances to determine whether there is sufficient information to give rise to reasonable suspicion. *See, e.g., State v. Williams*, 623 N.W.2d 106, 114 (Wis.) (holding that a tip of ongoing drug

dealing gave rise to reasonable suspicion because it was from a citizen informant providing personal observations), *cert. denied*, 534 U.S. 949 (2001). The situation of an anonymous caller reporting a drunk or erratic driver is one such example. In these cases, little information is available to support the credibility of the caller—generally, their identity is unknown and they are unable to provide predictions of future behavior. *See Boyea*, 765 A.2d at 873 (*Skoglund*, J., concurring) (noting that "little precognition [is] needed to deduce that the car would continue on that highway").

In *Melanson*, we held that an anonymous tip could provide reasonable suspicion to support stopping a driver in a driving while intoxicated case. *Melanson*, 140 N.H. at 202-03. In that case, an anonymous caller reported that an individual was possibly driving while intoxicated. *Id.* at 200. The caller gave the vehicle's license plate number, a description of the vehicle, including make, model, and color, the vehicle's current location and direction of travel. *Id.* While the officer was responding to the report, the caller further stated that the vehicle had driven off the road into a field. *Id.* Shortly after receiving all of this information, the officer spotted the vehicle and activated his lights to stop it. *Id.* Before the vehicle stopped, the officer observed it veer into oncoming traffic. *Id.* For purposes of the appeal, we assumed that the stop occurred when the officer activated his lights. *Id.*

We held that, considering the totality of the circumstances, the anonymous tip gave the officer reasonable suspicion to stop the vehicle. *Id.* at 201-03. The tip supported an inference that the informant had personally observed the vehicle because it included a "specific description of the car, knowledge of its exact location at a moment in time, and ... specific information regarding the car's movements." *Id.* at 201. In evaluating the tip, we noted that "[a]n informant who has personally observed incriminating behavior has a strong[] basis of knowledge." *Id.* Moreover, we recognized that the specificity of the tip was significant because "an explicit and detailed description of alleged wrongdoing is entitled to greater weight than a general assertion of criminal activity," and, therefore, it supported a finding of reliability. *Id.* at 201-02.

This is our first opportunity to re-examine *Melanson* in light of the United States Supreme Court's decision in *Florida v. J.L.* Since *J.L.*, a few intermediate state appellate courts have concluded that anonymous tips of drunk or erratic driving are unreliable, requiring police corroboration of the tip's incriminating details. *See Washington v. State*, 740 N.E.2d 1241, 1246 (Ind. Ct. App. 2000), *cert. denied*, 753 N.E.2d 7 (Ind. 2001); *State v. Boyle*, 793 So. 2d 1281, 1283-85 (La. Ct. App. 2001); *Com. v. Lubiejewski*, 729 N.E.2d 288, 291 (Mass. App. Ct. 2000); *Hall v. State*, 74 S.W.3d 521, 525-27 (Tex. App. 2002).

By contrast, *every* state court of last resort that has directly addressed the issue has concluded that, in a drunk or erratic driving case, certain tips are sufficiently reliable and detailed, when viewed in the totality of the circumstances, to establish reasonable suspicion. *See Bloomingdale v. State*, 842 A.2d 1212, 1217-22 (Del. 2004); *State v. Prendergast*, 83 P.3d 714, 723-24 (Haw. 2004); *State v. Walshire*, 634 N.W.2d 625, 630 (Iowa 2001); *State v. Crawford*, 67 P.3d 115, 119-20 (Kan. 2003); *State v. Lafond*, 802 A.2d 425, 429-30 (Me. 2002); *State v. Golotta*, 837 A.2d 359, 366-69 (N.J. 2003); *State v. Scholl*, 684 N.W.2d 83, 88 (S.D. 2004); *Boyea*, 765 A.2d at 868. The Eighth Circuit Court of Appeals, the only federal appellate court to address the issue, concurs. *United States v. Wheat*, 278 F.3d 722, 731-34 (8th Cir. 2001), *cert. denied*, 537 U.S. 850 (2002).

In *Boyea*, for instance, an anonymous caller reported that a blue-purple Volkswagen Jetta, with New York plates, traveling south on I-89, between Exits 10 and 11, was operating erratically. *Boyea*, 765 A.2d at 863. Within minutes, a nearby officer saw the car and stopped it. *Id.* The officer did not personally observe the car being driven erratically before stopping it. *Id.*

The Vermont Supreme Court ruled that the tip in *Boyea* was more reliable than that in *J.L. Id.* at 867. "[I]n *J.L.*, ... the anonymous informant had provided nothing more than a bare-bones description of an individual standing at a bus stop." *Id.* By contrast, the informant in *Boyea*, "described with particularity ... the location of a fast moving vehicle on a freeway, information which the officer confirmed within minutes of the call." *Id.* After balancing "the serious threat posed to public safety by the frequency with which individuals, while under the influence of intoxicating liquor, continue to operate motor vehicles on the public highways" against "the relatively minimal intrusion" posed by the stop, the court concluded that "the scale of justice ... must favor the stop; a reasonable officer could not have pursued any other prudent course." *Id.* at 868 (quotation omitted).

Likewise, in *Wheat*, an anonymous caller reported that "a tan- and cream-colored Nissan Stanza or 'something like that,' whose license plate began with the letters W-O-C, was being driven erratically." *Wheat*, 278 F.3d at 724. The caller provided the location and direction of the vehicle and complained that "the Nissan was passing on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a complete maniac." *Id.* (quotation omitted). Considering the totality of the circumstances, the court relied on three factors in holding that the tip established reasonable suspicion.

First, the anonymous caller provided an extensive description of the vehicle. *Id.* at 737. The court reasoned that a sufficient quantity of information, such as the make and model of the vehicle, its license plate

numbers, its location and bearing and similar innocent details, are necessary to ensure that the vehicle stopped is the same as the one identified by the caller. *Id.* at 731.

Second, the caller provided contemporaneous eyewitness observations. *Id.* at 737. The court reasoned that where a caller is providing personal observations of a crime in progress that is carried out in public and identifiable and observable by anyone, the caller's basis of knowledge is apparent. *Id.* at 734. Such a situation is distinguishable from *White* because "[n]o intimate or confidential relationship was required to support the accuracy of the observation," and thus, "no need to verify that [the caller] possesse[d] inside information" through the corroboration of predictive behavior. *Id.* (quotation omitted).

Finally, the caller described specific examples of traffic violations. *Id.* at 737. The court reasoned that, because a "mere hunch" does not amount to reasonable suspicion, "the more extensive the description of the alleged offense, the greater the likelihood that the tip will give rise to reasonable suspicion." *Id.* at 732 & n.8. The court thus concluded that, given the totality of the circumstances, the tip established reasonable suspicion. *Id.* at 737.

In contrast, in *State v. Miller*, 510 N.W.2d 638, 644-45 (N.D. 1994) (quotation omitted), the North Dakota Supreme Court held that a tip that a driver in a fast-food restaurant's drive-up lane "could barely hold his head up" and was possibly drunk could not create reasonable suspicion in part because it was "short on specifics." In *State v. Lee*, 938 P.2d 637, 640 (Mont. 1997), the Montana Supreme Court held that an anonymous caller's "belief" that a driver was under the influence of alcohol and was speeding, without any indication that the caller's belief was based upon personal observation of drinking, speeding, or erratic driving, did not support a finding of reasonable suspicion. Similar to *Lee*, we held in *Blake* that an anonymous telephone tip reporting a black sedan with New Hampshire license plate CLH-922 had squealed its tires on Chandler Street did not amount to reasonable suspicion in part because it was not clear that the caller had any basis of knowledge nor did the caller indicate whether he had observed the car. *Blake*, 146 N.H. at 2, 4.

■ In light of these cases, we hold the following factors, viewed in light of the totality of the circumstances, are important when evaluating whether an anonymous tip gives rise to reasonable suspicion. First, whether there is a "sufficient quantity of information" such as the vehicle's make, model, license plate number, location and bearing, and "similar innocent details" so that the officer may be certain that the vehicle stopped is the one the tipster identified. *Wheat*, 278 F.3d at 731. Second, the time

interval between the police receiving the tip and the police locating the suspect vehicle. *Id.* Third, whether the tip is based upon contemporaneous eyewitness observations. *Id.* at 734; *see Blake*, 146 N.H. at 4. Fourth, whether the tip is sufficiently detailed to permit the reasonable inference that the tipster has actually witnessed an ongoing motor vehicle offense. *See Golotta*, 837 A.2d at 369.

We note that, although police corroboration of future behavior was a determinative factor in *White*, the lack of such corroboration is not fatal to the tip because "[o]ne [does] not require access to inside information or knowledge of the suspect's prior activities or personal proclivities to observe such public criminal behavior." *Boyea*, 765 A.2d at 871 (*Skoglund*, J., concurring). We also note that corroboration of incriminating behavior is not required because "a police officer who corroborated the claim of reckless driving would then have not merely reasonable suspicion to justify an investigatory stop, but probable cause to make an arrest." *Wheat*, 278 F.3d at 733.

These are admittedly close cases—the issue of whether reasonable suspicion supports a particular stop is fact driven and depends upon the totality of the circumstances in each case. Although we hold that the police may act on an anonymous tip of reckless or drunk driving, it is only under limited circumstances.

We now turn to the tip provided in the instant case. The tip stated that a blue pickup truck with Massachusetts plate number 9557FO was "all over the road," and had entered the Everett Turnpike at Exit 6 heading south. Based upon the testimony of Trooper Lencki, the trial court made the following findings: (1) the anonymous caller had no established track record of accurate tips to bolster his allegations; (2) the caller had some basis for knowledge since he was able to describe the color and type of vehicle, the license plate number and the location and bearing of the vehicle; (3) it is unclear whether the caller personally saw the alleged driving; and (4) the allegation that the vehicle was "all over the road" was too "general in nature." The trial court then concluded that, based upon the totality of the circumstances, the stop of the defendant's vehicle was not supported by reasonable suspicion.

Although the trial court addressed a number of the factors set out above, the relative weight the court afforded those factors is unclear. In applying the totality of the circumstances test, the above four factors generally deserve significant weight. Other factors, such as the trial court's finding that the anonymous caller had no established track record of accurate tips, may be less important to the analysis.

Today we have provided a comprehensive analytical framework for evaluating whether an anonymous tip gives rise to reasonable suspicion to

justify an investigatory stop. We have identified certain factors as integral to applying the totality of the circumstances test in these situations. Because the trial court did not have the benefit of our analysis and it is not clear the weight the trial court afforded to the various factors, we remand for a determination as to whether the anonymous tip satisfies the totality of the circumstances test given the factors identified above. Remanding to the trial court is especially appropriate in situations like this where the application of the test involves a fact-intensive inquiry. *Cf. Verizon New England v. City of Rochester*, 151 N.H. 263, 271 (2004) (remanding for application of test by the trial court in the first instance).

Because the Federal Constitution affords no greater protection in this context, we reach the same conclusion under the Federal Constitution as we do under the State Constitution. *See Wheat*, 278 F.3d at 731-37; *Melanson*, 140 N.H. at 201-03.

*Vacated and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.